IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARRIVA PHARMACEUTICALS, INC. fka ALPHAONE PHARMACEUTICALS, INC., a California corporation,<br><br>Plaintiff,<br>v.<br><br>SONORAN DESERT CHEMICALS, LLC, etc., et al.,<br><br>Defendants.<br>_____/<br>AND RELATED COUNTERCLAIMS.<br>_____/ | No. C 99-02169 SI<br><br>**ORDER GRANTING PLAINTIFF'S MOTION TO DISMISS DEFENDANTS' DECLARATORY RELIEF COUNTERCLAIM, CONDITIONED UPON PLAINTIFF's DISMISSAL OF CLAIMS** |

On June 23, 2006, the Court heard argument on plaintiff's motion to dismiss defendants' counterclaim for declaratory relief. Having considered the arguments of counsel and the papers submitted, and for good cause appearing, the Court hereby GRANTS plaintiff's motion for the reasons and on the conditions set forth below.

**BACKGROUND[1]**

**1.    Parties and factual history**

This action arises from a dispute between two former business partners, Dr. Allan Wachter ("Wachter"), a medical doctor, and defendant John Lezdey ("Lezdey"), a patent attorney. In the early

---

[1] Much of the factual history appears in both parties' moving papers and are therefore assumed to be uncontested. Citations are therefore provided only when a fact is disputed or appears only in the filings of one party.

1990s, Wachter and Lezdey invented and jointly acquired patents for medical technologies related to the treatment of inflammation. In 1992, Wachter and Lezdey transferred their interests in the patents to defendant Sonoran Desert Chemicals Limited ("Sonoran"). Sonoran is 50% owned by Wachter through two holding companies, Nathan M. Technologies and Seth Chemicals, and 50% owned by Lezdey, also through two holding companies, J.L. Technology LP and J & D Science, Inc.

Shortly after forming Sonoran, Wachter and Lezdey formed Protease Sciences, Inc. ("Protease") and authorized Protease to serve as Sonoran's agent for, among other things, negotiating and entering into licensing agreements on behalf of Sonoran. Protease was originally owned 50% by Wachter and his family and 50% by Lezdey and his family. At the time, Wachter and Lezdey were Protease's sole board members. The identity of Protease's current owners and board members is a matter of dispute between Wachter and Lezdey. *See* Def. Counterclaim, ¶ 11; Decl. of Grant L. Kim In Support of Arriva's Motion to Dismiss ("Kim Decl."), Ex. 23, at 5-19.

On April 16, 1998, Protease entered into a purported License Agreement with plaintiff Arriva Pharmaceuticals, Inc. ("Arriva"),[2] then known as AlphaOne Pharmaceuticals, under which Protease granted Arriva exclusive license to utilize the Sonoran patents in specified medical fields. Pl. Compl. Ex.1. The validity of this Protease/Arriva license is the central disputed issue giving rise to this action. Wachter alone signed the agreement on behalf of Protease, but Arriva contends that Lezdey advised and approved the execution of the agreement. Pl. Compl. ¶ 13. Lezdey, on the other hand, alleges that the agreement was unlawfully executed without his knowledge or consent. Def. Counterclaim ¶ 19.

At some point following the execution of the Protease/Arriva license, Arriva entered into a sub-license with counter-Defendant Baxter Healthcare Corporation ("Baxter") that provided Baxter with specified rights to the patents. The validity of this sub-license is also disputed by Lezdey. Def. Compl. ¶ 23.

AlphaMed Pharmaceuticals ("AlphaMed") is the final relevant party to the dispute. AlphaMed was formed by Lezdey and his family in 1999. In the same year, AlphaMed purportedly received a license from Protease for its patents. Arriva alleges that the Protease/AlphaMed license is invalid and

---

[2]Arriva is owned by Wachter, Lezdey and others.

2

violates the terms of the Protease/Arriva exclusive licensing agreement. Compl. ¶¶ 27-30.

**2.     This action: Filing and stay**

After Lezdey allegedly questioned the validity of the Protease/Arriva license and the Arriva/Baxter sub-license in discussions with Arriva's board members, potential investors and business partners, Arriva and Wachter filed multiple lawsuits, including this action. In May 1999, Arriva filed the complaint before this Court, naming seven defendants: Lezdey, Lezdey's two sons (Jarrett and Darren Lezdey), Sonoran, Protease, and Lezdey's two holding companies, J&D Science and J.L. Technology.[3] Shortly after the filing of this complaint, Wachter filed his own complaint in Arizona state court, raising similar issues and naming the same seven defendants plus Lezdey's wife, Noreen.

After this Court denied Arriva's motion for a temporary restraining order, the parties agreed to a stay of this federal action, pending the outcome of the related Arizona case. In particular, the parties noted that the Arizona court was adjudicating issues related to the ownership of Protease and to the validity of actions taken by Protease with respect to Arriva, and that these issues could have a significant impact on this action. Kim Decl., Ex. 3, Joint Case Management Statement of December 2, 1999, at 2. The stay took effect in December 1999.

**3.     Arizona court litigation:  Preliminary injunction**[4]

In February 2000, the Arizona state court, following an evidentiary hearing attended by Lezdey, issued a preliminary injunction that prohibited Lezdey, his sons or either of his two holding companies from "acting or speaking, or purporting to act or speak, on behalf of Protease or Sonoran without Plaintiffs' [Wachter's] consent." Kim Decl., Ex. 4, Preliminary Injunction of February 2, 2000, at 13. The injunction also prohibited the defendants from contacting any of Arriva's potential business partners and investors or otherwise interfering with Arriva's business operations. *Id.*

---

[3] Arriva's complaint also includes employment-related causes of action against Lezdey's sons, who subsequently filed counterclaims against Arriva. Issues related to these causes of action are not the subject of this motion and are therefore not discussed.

[4] This Court takes judicial notice of the Arizona court orders and pleadings.

3

More importantly for this matter, the Arizona court issued extensive Findings of Fact along with its Order. These findings include:

- "Lezdey knew the material terms and conditions of the [Protease/Arriva] License Agreement, advised Wachter that the Agreement was valid, and approved Wachter's execution thereof." *Id.*, ¶ 41.

- The Protease/Arriva license is "valid and enforceable." *Id.*, ¶ 61

In November 2000, the Arizona Superior Court added to its finding through an amendment to the preliminary injunction. The court further found that the Protease/AlphaMed license was improperly created and that John Lezdey had testified untruthfully in his deposition regarding the AlphaMed license. Kim Decl., Ex.6, Amended Injunction, at 2-3. All other findings were confirmed. *Id.*

Lezdey and his sons did not appeal the Arizona court's preliminary injunction.

**4.     Arizona court litigation: Permanent injunction**

Following a series of delays, including an unsuccessful attempt by Lezdey to have the case removed to a federal court in Arizona, a bench trial took place in January 2002. The trial was not without its peculiarities. Despite repeated advance notice, neither Lezdey, his sons, his wife nor their counsel attended the trial.[5] In addition, in the month preceding the trial, the Arizona court had entered a liability judgment against Lezdey's sons as a sanction for their failure to appear for depositions. The trial against Lezdey's sons, therefore, was on the issue of damages only. Another factor complicating the trial was Lezdey's declaration of bankruptcy on the day immediately preceding the trial's commencement, thereby automatically staying the case against him. Notwithstanding these complications, the court conducted a bench trial against Lezdey's sons (on damages only), his wife Noreen and J.L. Technology.[6] The trial included multiple hours of witness testimony and the introduction of almost 300 exhibits. Kim Reply Decl., Ex. A, Tierney Affidavit, ¶ 21.

---

[5] Lezdey contends that ill health and financial difficulties prevented him and his family from attending the trial. The Arizona court rejected this argument. Kim Decl., Ex. 15 at 5.

[6] Lezdey's other holding company, J & D Science, was not a party to the trial, having also filed for bankruptcy in the week prior to trial.

4

On February 22, 2002, the Arizona Court issued a final judgment against Lezdey's sons and J.L. Technology.[7] In addition to awarding Wachter $17.4 million in compensatory and punitive damages, the court issued a permanent injunction against Lezdey's sons and J.L. Technology that mirrored its preliminary injunction. Moreover, the court found that the Protease/Arriva license was "valid and enforceable" and remained "fully in effect." Kim Decl., Ex. 8, Permanent Injunction, ¶¶ 38, 61. The court further found that John Lezdey had violated his fiduciary duty to Wachter, Protease, Sonoran and Arriva by, among other things, preparing false documents and improperly interfering with Arriva's business operations and prospective business partners. Lastly, the court found the Protease/AlphaMed license to be "wholly void and of no effect." *Id.*, ¶ 72.

Lezdey's sons and J.L. Technology unsuccessfully appealed the Arizona judgment and permanent injunction.

Although the validity of the Protease/Arriva license would appear to have been decided in the Arizona litigation, defendants argue that this Court should discount the Arizona court's ruling for two primary reasons. First, as a result of the bankruptcy stay, John Lezdey was not a direct party to the Arizona trial, the final judgment or the permanent injunction.[8] Second, the judgment against Lezdey's sons resulted from a discovery sanction and not from evidence produced at trial. For these reasons, defendants assert that Lezdey and his sons have not had an adequate opportunity to litigate the license issue.

**5.    Arizona court litigation: Pending suit against John Lezdey**

In July 2002, the Bankruptcy Court lifted the automatic stay that had prevented Wachter from pursuing his claims against Lezdey in the Arizona litigation. As a result of numerous postponements, a trial date has yet to be determined. However, the Arizona court has scheduled a conference between the parties and a newly assigned Superior Court judge on August 25, 2006 to schedule a trial date. The

---

[7] The Arizona Superior Court also entered judgment against Lezdey's wife Noreen. This judgment was vacated on appeal.

[8] Lezdey was, however, indirectly a party to the trial and its result as a co-owner of J.L. Technology LP.

5

1  parties' Pretrial Statement indicates that the validity of the Protease/Arriva license will once again be
2  a central issue.[9] Kim Reply Decl., Ex. D, Joint Pretrial Statement, filed June 21, 2004, at 12 (xiv)-(xv),
3  19 (xv)-(xxii).

**6.     Arizona court litigation: Contempt proceedings against John Lezdey**

Lezdey's relationship with the Arizona Superior Court has not been good. He has been held in contempt of court on three separate occasions: first, in October 2000, for testifying untruthfully during his deposition and refusing to appear at a later deposition; second, in February 2002, for willfully violating the court's preliminary injunction by interfering with Arriva's business operations and acting on behalf of Protease without Wachter's consent; and in September 2003, for failing to pay previously imposed sanctions, for continuing to violate the preliminary injunction, and for repeatedly delaying the Arizona action through bad faith procedural actions.

In its final contempt order, the Arizona court specifically found that Lezdey's filing of the federal counterclaim in this case on behalf of Sonoran without Wachter's consent was a violation of the preliminary injunction and has ordered Lezdey to dismiss the Sonoran counterclaim in this court.

The Arizona contempt proceedings had one additional and important outcome. In November 2004, as a sanction for Lezdey's continued disregard of the various contempt orders, the Arizona court dismissed with prejudice all of Lezdey's counterclaims against Wachter in the Arizona litigation. Lezdey and Sonoran rely heavily on this inability to bring a counterclaim in Arizona court in their opposition to the motion under consideration here.

**7.     Florida litigation: <u>AlphaMed v. Arriva</u>**

In 2003, AlphaMed, the company controlled by Lezdey and his sons, filed a tort suit against Arriva in Florida federal court, claiming that Arriva had misappropriated trade secrets and engaged in unfair competition. A trial resulted in a jury verdict in favor of AlphaMed. However, on May 26, 2006, the Florida district court granted Arriva's motion for judgment as a matter of law. AlphaMed has filed

---

[9]Whether Lezdey will be collaterally estopped from re-litigating the license validity issue is an open question.

6

a notice of appeal.

**DISCUSSION**

Arriva seeks an order dismissing the declaratory relief counterclaim by defendants Lezdey and Sonoran, on the grounds that the central issue in the counterclaim - the validity of the Protease/Arriva license - is the subject of ongoing litigation in an Arizona state court, and that this Court's involvement is therefore duplicative and unnecessary. Arriva argues alternatively that defendant Sonoran's counterclaim should be dismissed because Sonoran lacks capacity to assert the counterclaim without Wachter's consent.[10]

**1.      Dismissal of Lezdey and Sonoran's counterclaim based on the *Brillhart* factors**

Under the express terms of the Declaratory Judgment Act, the granting of declaratory relief by a district court is discretionary. *See* 28 U.S.C.A. § 2201(a) (West 2006); *Cont'l Cas. Co. v. Robsac Indus.*, 947 F.2d 1367, 1369 (9th Cir. 1991). Although a pending state action does not require a district court to refuse declaratory relief jurisdiction, when the state action presents the same state law issues as the federal action, "there exists a presumption that the entire suit should be heard in state court." *Chamberlain v. Allstate Ins. Co.*, 931 F.2d 1361, 1366-67 (citing *Brillhart v. Excess Ins. Co.*, 316 U.S. 491, 495 (1942)).

Three primary factors govern a federal court's decision to grant declaratory relief jurisdiction when a related action is pending in state court: (1) avoidance of duplicative litigation, (2) avoidance of needlessly determining issues of state law, and (3) discouragement of forum shopping by either party. *See Brillhart*, 316 U.S. at 495; *Robsac*, 947 F.2d at 1371; *Am. Nat'l Fire Ins. Co. v. Hungerford*, 53 F.3d 1012, 1016-19 (9th Cir. 1995), *overruled on other grounds, Gov't Employees Ins. v. Dizol*, 133 F.3d 1220, 1227 (9th Circ. 1998). An analysis of these factors may entail an inquiry into, among other things, the scope of the state action, the availability of remedies and defenses, and the involvement of

---

[10]Arriva represented in its moving papers that if the counterclaim is dismissed, Arriva will withdraw its claims against Lezdey and Sonoran, as well as its claims against three related companies. The discussion which follows is conditioned on Arriva's doing so.

7

necessary parties. *Brillhart*, 316 U.S. at 495.

Both parties agree that the validity of the Protease/Arriva license is "at the heart of this . . . counterclaim for declaratory and injunctive relief." Kim. Decl., Ex. 21, at 3. Plaintiff Arriva therefore argues that, because the license's validity has been and continues to be the subject of extensive litigation in Arizona state court, retrying the issue in this Court would: (a) be duplicative and wasteful, (b) require an unnecessary determination of state law, and (c) encourage defendant Lezdey's bad faith efforts to forum shop and otherwise disrupt the Arizona litigation. Defendants Lezdey and Sonoran counter by arguing that the validity of the license has not been extensively litigated in Arizona, that this Court is better suited to decide the issue and that Arriva is the party guilty of forum shopping.

### A.  First *Brillhart* factor:  Duplicative litigation of license validity

The Court concludes that the Protease/Arriva license issue has already been extensively litigated in the Arizona court, and that any litigation in this court would be duplicative. The license's validity was a specific finding in the court's final judgment and permanent injunction against Lezdey's sons and J.L. Technology and in its preliminary injunction order against Lezdey. The preliminary injunction was issued after a two-day evidentiary hearing in which both Lezdey and his counsel participated. The final judgment and permanent injunction followed a bench trial that included multiple hours of testimony and the introduction of almost 300 exhibits. Kim Reply Decl., Ex. A, Tierney Affidavit, ¶ 21. Moreover, during the more than 7 years that the litigation has been pending in Arizona court, Lezdey and his counsel have filed an answer and counterclaims, actively participated in discovery and submitted numerous motions. Finally, to the extent that this history of litigation is insufficient, defendant Lezdey will have the opportunity to once again litigate the license issue in the upcoming trial against him in Arizona state court.

Defendants Lezdey and Sonoran argue that litigation of the license issue would not be duplicative because plaintiff Arriva and counter-Defendant Baxter are not parties in the Arizona litigation. However, the Ninth Circuit has held that dismissal of a federal declaratory relief claim may be warranted even when the parties to a related state court proceeding are not identical to those in the federal action. *See Am. Nat'l Fire Ins. Co. v. Hungerford*, 53 F.3d 1012, 1015 (9th Cir. 1995). This

8

is particularly true when the state court has already developed a factual record and/or will effectively decide the issue about which declaratory relief is sought. *See id.* at 1017. In *Hungerford*, an insurance company filed a federal claim against one of its customers seeking a declaration of non-coverage. *Id.* at 1015. The insured was involved in a related state court proceeding that shared many of the underlying facts with the federal action. *Id.* However, the insurance company was "not a party to [the California state] action and could not, under California law, have been joined as a party or had the issue of insurance coverage heard in the California proceeding." *Id.* at 1016. Nonetheless, the Ninth Circuit dismissed the insurance company's declaratory relief claim. *Id.* at 1019. The court held that the state court was a more suitable forum for the insurance company's declaratory relief claim because the state court had already developed an extensive factual record while the federal record was "barren." *Id.* at 1017. Trying the insurance company's claim in federal court would therefore "result in a waste of federal resources at every level of the decision making process." *Id.* at 1018; *see also McGraw-Edison Co. v. Performed Line Products Co.*, 362 F.2d 339, 344-345 (9th Cir. 1966) (dismissing defendant's declaratory relief counterclaim on the grounds that the issue would be effectively decided in a related Ohio District Court case even though defendant was not a party to the Ohio case and could not be bound by its result).

With regard to the present action, the Arizona court has developed a much more extensive factual record than this Court. The Arizona litigation has involved considerable discovery (in which Lezdey and Sonoran have participated), multiple evidentiary hearings and a bench trial that resulted in a lengthy findings of fact. The factual record before this Court is, on the other hand, essentially "barren." *See Hungerford*, 53 F.3d at 1017. In addition, as discussed previously, the Protease/Arriva license issue will be decided by the Arizona court even though Arriva and Baxter are not party to the Arizona proceedings.       Defendants distinguish *Hungerford* by arguing that a key factor in the *Hungerford* court's dismissal was the availability of declaratory relief in state court. *See Hungerford*, 53 F.3d at 1018. While the defendants in this case have admittedly been barred from bringing a declaratory relief claim in the Arizona court, the remedy's unavailability is the result of defendant Lezdey's contemptuous acts, not as a result of a procedural hurdle. In striking Lezdey's counterclaims, Arizona Superior Court Judge Armstrong noted, "To protect and preserve the integrity of the judicial

9

system, Defendant [Lezdey] should not be permitted to press claims in the Court while openly defying its authority." Declaration of John C. Steele in Support of Lezdey and Sonoran's Opposition ("Steele Decl."), Ex. C, Superior Court of Arizona Order, at 2. Lezdey has not appealed this decision. Furthermore, Lezdey's explanation for his behavior towards the Arizona court - that plaintiff Arriva and Wachter are participating in a malicious scheme to bankrupt Lezdey and his family in which the Arizona court is complicit - is unpersuasive. Def. Opposition at 7, 12.

Defendants also argue that, because the Arizona court's judgment against Lezdey's sons was the result of a discovery sanction and not the result of evidence produced at trial, the license issue has not actually been litigated in the Arizona court. This argument is flawed for two reasons. First, none of the cases cited by either party requires that an issue have been *actually litigated* in state court. The cases only require that the issue be the subject of *pending* state litigation. A well-developed factual record in state court, not a final judgment, is the relevant factor. *See Hungerford*, 53 F.3d at 1016. Even assuming that the defendants are correct and the rules of collateral estoppel will not prevent re-litigation of the license's validity in this Court or the Arizona court, the validity of the Protease/Arriva license will be a main issue in the pending Arizona trial against John Lezdey. Second, although Lezdey's sons were the subject of the discovery sanction, another defendant in the 2002 Arizona trial and final judgment, the Lezdey holding company J.L. Technology, had not been the subject of sanctions. The evidence presented at trial was therefore necessary for a finding of its liability.

In summary, judicial economy would be best served by allowing the Arizona state court to decide (to the extent it has not already decided) the Protease/Arriva license validity issue. The Arizona court has already developed a factual record on the issue through a previous trial and related discovery (in which defendants Lezdey and Sonoran have participated) and will continue to hear evidence and argument on the issue in the upcoming trial of John Lezdey. Re-litigating the same issue in this Court would therefore be unnecessarily duplicative.

**B.     Second *Brillhart* factor: Unnecessary determination of state law**

The Court also concludes that comity between this Court and the Arizona Superior Court warrants denial of jurisdiction. The Supreme Court in *Brillhart* instructed that "gratuitous interference

10

with the orderly and comprehensive disposition of a state court litigation should be avoided." *Brillhart*, 316 U.S. at 495. In *Hungerford*, the Ninth Circuit noted that even if declaratory judgment would help clarify the legal issue pending before a state court, "such clarification would only come at the cost of increasing friction between state and federal courts, and would constitute an improper encroachment on state court jurisdiction." *Hungerford*, 53 F.3d at 1019. The court was particularly concerned about the risk that the state and federal courts might reach different conclusions when interpreting the same facts. *Id*. at 1019 n.7. In *McGraw-Edison*, the Ninth Circuit concluded that "it is well settled . . . that a declaratory judgment may be refused . . . where it is being sought merely to determine issues which are involved in a case already pending and can be properly disposed of therein." *McGraw-Edison*, 362 F.2d at 343. Finally, where "the sole basis of [federal] jurisdiction is diversity of citizenship, the federal interest is at its nadir." *Robsac*, 947 F.2d at 1371.

Here, the sole basis for jurisdiction is diversity. Second, as in *Hungerford* and *McGraw-Edison*, the license issue is one of state, not federal, law. Even if, as the defendants contend, the license issue should be governed by California rather than Arizona law, it is nonetheless a state law issue. Third, because the validity of the Protease/Arriva license was a direct finding of the Arizona court in the 2002 trial and will be an issue in the upcoming trial, there exists the risk that this Court's ruling would directly conflict with the Arizona court's ruling. This is the precise risk that the *Hungerford* court envisioned and consciously avoided. Finally, from a pragmatic standpoint, the fact that significant discovery and fact-finding have taken place in the Arizona court and not in this Court makes the Arizona court a more suitable forum for resolution of the license issue.

### C.     Third *Brillhart* factor: Avoidance of forum shopping

Finally, the Court finds that dismissal is warranted to avoid forum shopping by the defendants. The parties agreed to stay this litigation to allow the Arizona suit to proceed; now, after obtaining several adverse rulings in Arizona, defendants seek a more favorable forum. The Ninth Circuit has discouraged such opportunistic maneuvering. *See Am. Casualty Co. v. Krieger*, 181 F.3d 1113, 1119 (9th Cir. 1999) (upholding district court's granting of declaratory relief on the grounds that it helped prevent the defendants, who had lost several motions in federal court, from "wiping the slate clean and

11

starting this litigation anew in state court on the eve of their federal court trial.")

Defendant Lezdey has also been formally rebuked for forum shopping and other delay tactics by multiple courts. The Arizona District Court sternly reprimanded and sanctioned Lezdey for attempting a second removal of the state case to federal court. Kim Decl., Ex. 12 at 2:5. A Florida Bankrupty Court judge was equally direct; while dismissing a motion by Lezdey in 2003, Judge Timothy Corcoran noted that "it appears that this motion is just one more attempt by the debtor [Lezdey] to avoid or delay trial in the Arizona action by engaging in improper forum shopping . . . the debtor's conduct is even more egregious than was apparent in previous papers." Kim Decl., Ex. 11, Order Denying Debtor's Motion for Temporary or Preliminary Relief, at 20. Finally, in the last of its three contempt orders against Lezdey, the Arizona Superior Court specifically cited Lezdey's repeated, bad faith efforts to delay the Arizona trial through forum shopping. Kim Decl., Ex. 17, Order dated September 10, 2003 at 2, ¶ 6.

### 2. Dismissal of Sonoran's counterclaim

Arriva argues alternatively that Sonoran's counterclaim should be dismissed on the grounds that, by law, Sonoran lacks capacity to file the counterclaim because it does not have Wachter's authorization. This Court agrees.

Arriva argues that Sonoran, by the terms of its own Operating Agreement[11] and the rulings of the Arizona court, can only lawfully bring a counterclaim with the consent of Dr. Wachter. This authorization is, of course, lacking. The Sonoran Operating Agreement requires that Lezdey or Wachter get the consent of the other before acting on behalf of Sonoran, provided that either party supplies written notice that their consent is required. Kim Decl., Ex. 20, Sonoran Operating Agreement, at 3.1. Arriva contends that Wachter provided Lezdey with the required written notice when he filed various motions with the Arizona court requesting that Lezdey be prohibited from acting on behalf of Sonoran

---

[11] According to Federal Rule of Civil Procedure 17(b), Sonoran's capacity to sue is governed by Nevada law, the state of its incorporation. Under Nevada law, the decision to file a lawsuit must be made by members of the company in proportion to their capital contribution unless the corporation's operating agreement provides an alternate procedure, as is the case here. Nev. Rev. Stat §§ 86.281 and 86.291.

12

1 without Wachter's consent. Arriva further argues that the Arizona court's preliminary injunction, which 2 specifically prohibited Lezdey from acting for Sonoran without Wachter's consent, created a second 3 legal obligation. This second obligation is reinforced by the fact that the Arizona court found Lezdey 4 to be in violation of the injunction when he filed this counterclaim on behalf of Sonoran - a decision that 5 Lezdey unsuccessfully attempted to appeal.

6 Defendants do not contest any of the above facts. Instead, defendants argue that this Court 7 implicitly rejected the lack of capacity argument when it granted defendants leave to file their 8 counterclaims. Providing leave to file a claim, however, is not a decision on that claim's merits. In fact, 9 in a later order denying Lezdey's request for a TRO prohibiting enforcement of the Arizona injunction, 10 this Court noted that its decision to allow the counterclaims "was not intended to, and did not, express 11 any opinion concerning the validity of the Arizona injunction then in place against Mr. Lezdey." Kim 12 Reply Decl., Ex. E, Order Filed October 17, 2003.

13 Since Lezdey and Sonoran do not contest the key facts presented by Arriva, this Court concludes 14 that Sonoran lacks the capacity to sue without Wachter's consent.

### CONCLUSION

17 For the foregoing reasons and for good cause shown, the Court hereby GRANTS plaintiff's 18 motion to dismiss defendants' counterclaims for declaratory relief (Docket No. 129).[12] This dismissal 19 is conditioned upon plaintiff filing a dismissal without prejudice of its claims against Lezdey, Sonoran 20 and the remaining defendants other than Lezdey's sons Jarrett and Darren within 7 days of the filing 21 date of this Order. Following plaintiff's dismissal, the only claims remaining before this Court will be 22 Arriva's two employment-related causes of action against Darren and Jarrett Lezdey and Darren and 23 Jarrett Lezdey's counterclaims for back pay, breach of contract and other employment-related issues. 24 These remaining claims will be the subject of the parties' next case management conference, scheduled

---

[12] Since defendants' request for injunctive relief is derivative of its declaratory relief claim, that claim is likewise dismissed by this Order. *See Golden Eagle Ins. Co. v. Travelers Cos.*, 103 F.3d 750, 755 (holding that, when an action consists of a declaratory relief claim and a non-declaratory claim that is "wholly dependent upon a favorable decision" on the declaratory claim, the entire action is one for declaratory relief).

13

for July 28, 2006.

**IT IS SO ORDERED.**

Dated: July 5, 2006

SUSAN ILLSTON
United States District Judge